420-0359-WC, Emily Purcell, appellant by Sandra Loeb, v. Illinois Workers' Compensation Commission, University of Illinois, Appalachia, by Joseph Grayett. If you'll notice, this is for the attorneys present, we are missing one justice, Justice John Barberos. He has a conflict and will not be able to be remotely present, if that's the proper term, for this oral argument, but he will be a fully participating member of this court on your case. He has, of course, the benefits of the briefs that you have filed, and he will also have the benefit of the oral argument that you're about to make. So, with that announcement, we'll begin. Ms. Loeb? Ms. Loeb, very fine print on the screen. If you would like to proceed. Thank you, Your Honor. My name is Sandra Loeb, and I represent the injured worker, Emily Purcell. This court should reverse the commission's finding that Ms. Purcell's injury did not arise out of her employment, because the manifest weight of the evidence supports the finding that Ms. Purcell was a traveling employee at the time of her injury, and a finding that her injuring act was reasonable and foreseeable to the employer. The commission clearly erred by failing to find that Ms. Purcell was not a traveling employee at the time of her injury. Under Illinois law, a traveling employee is simply one whose work requires her to travel away from the office. In this case, the undisputed facts showed that Ms. Purcell's job required her to travel away from her office on a regular basis to perform a variety of duties. Even though the commission concluded that Ms. Purcell was not paid for the time it took her to travel away from her office to drop off her time card, it remains undisputed that Ms. Purcell was required to do so by virtue of her employment. Can I interject a preliminary threshold question? Who's Mr. Chu? Ms. Chu is her supervisor, her direct supervisor at the library. Did she testify that the claimants tasks outside the library were uncommon, and when the claimant worked outside the library, it was by the specific direction of her supervisor? So it sounds like she was doing this at the specific direction of her supervisor, not as a regular part of her routine. Well, I think the two aren't mutually exclusive. She can do, I mean, there is a little dispute as to how often, but I believe Ms. Chu did admit that she did have tasks that took her outside of the office. She also admitted that she didn't direct when and where Ms. Purcell went at every time. I think Ms. Purcell, the fact that she had to leave her office qualifies her as a traveling employee. There's no limit in the law as to how many minutes you have to be away from your office, but the fact that she had to travel away from her office is what qualifies her. Now, are you all in on the traveling employee doctrine, or do you have an alternative theory? My alternative theory is the street risk doctrine. The street risk doctrine is slightly different than the traveling employee doctrine, as far as I can tell. The street risk doctrine indicates that when your employment requires you to travel the streets, that the risk of traveling the streets becomes a risk of your employment. And in this case, clearly Ms. Purcell had a job requirement that required her to travel the streets at the time of her injury. Again, I don't think it matters that she wasn't paid to drop off her time card. What matters is that this was a requirement in order for her to get paid, which is obviously an essential part of being employed, especially when you're an extra help hourly employee. It's very important that you get those time cards in as directed. How do you respond to the opposite side's argument that the claimant voluntarily hopped over the chain link fence when her heel got caught and she was injured, and that an injury does not arise out of employment when the employee voluntarily exposes himself or herself to unnecessary personal danger? I mean, she wasn't required to hop over this fence, was she? No, she was not required to hop over the fence. However, as we know, there is no defense of comparative negligence under workers' compensation law, nor should there be. When we're dealing with a remedial statute, its purpose is to ensure a injured worker's cost of medical expenses incurred while they're performing duties for their employment. Well, that may be true, but if that's the case... Doesn't the street risk doctrine assume that the risk is a street risk? Is hopping over chain link fences a street risk? Well, I think the law defines a street risk as any hazard or source of danger encountered on the street. There's no requirement that it be, you know, unable to be a defect or something that's not easily discovered. There's case law where this court has found that tripping over a curb that had no defect was... In that case, the worker was required to get out of his car and cross over the curb. In this particular case, she hopped over a chain link fence. I mean, it would seem to me that it's carrying the street risk doctrine to a real extreme. Well, I'm not sure that in the Ney case that he was required to traverse that specific curb. I don't remember that fact being present in the case. In that case, it very well could have been a way to get around an uneven curb and probably a couple of feet down from where he wound up tripping, but I don't think the onus is on the employee to avoid danger unless it's, you know, if it's something that would be considered reckless to cross this fence. I look at these pictures and the fence, even the respondent's brief says that the fence appears to be two feet high. It's certainly less than knee high on most individuals. We're not talking about a high chain link fence. We're not talking about something she had to scale. We're talking about a single strand that's directly in front of the entrance to a building. Clearly, you look at this picture, there's no way that this fence was intended to prevent pedestrians from crossing it. To me on this campus, you see it all the time. It's to prevent motor vehicles from crossing it. Counsel, how do you distinguish this case from the Dodson case in which we held that the claimant's voluntary decision to traverse the grassy slope instead of the walkway, exposed to her unnecessary danger, separate from her employment responsibilities and compensation was denied. How is that distinguishable from this case? Well, in Dodson, the claimant chose to cross a slippery slope of grass on her way exiting the employment. She was going to her car. In this case, you can't say as the court said in Dodson that the act of making or that the injuring act was entirely separate from her employment. It makes a difference that Ms. Purcell was on her way to drop off her time card and that she took the most direct route from where she was dropped off by the bus directly west across to the sidewalk. And yet here the commission applied Dodson, did it not? It did. And I didn't think it was appropriate for it to do so because it is distinguishable that Ms. Purcell's injury did occur while she was in the act of doing something that was part of her employment. So are you saying that if somebody's acting within their employment, whether they're coming or going, they can take an unnecessary risk and it'll be compensable because they're in the active employment? Well, again, I don't find that this to be an unnecessary risk. I think it's an unfortunate accident, just like any other street risk. Tripping over a curve that was hazardous is also something that, you know, the employee did not necessarily have to encounter, but it happened. Council was taking a shortcut in the case we're talking about, Dodson, whatever it was in the materials, taking a shortcut by going down a grassy slope when there is a clear stairway very close by, but the grassy slope is a more direct route. Is that a hazardous condition to do that or to not take the clear stairway? Well, sure, it was a hazardous condition, but she also opted to do that when it was of no benefit for the employer to do so. There was no argument that she was doing anything in furtherance for the employer when she did it. What was she doing in furtherance of the employer here? She's going to drop off her time card before her workday begins. They need to... It's in furtherance of her employment because this is the system they've been using. How do you deal with the evidence that it's not the policy that folks do this during the workday, that this is supposed to be done before lunchtime or after the workday? Well, again, the fact that that's... I don't think... I think the requirement is there whether or not she gets paid to do it. Whether she gets paid to do it goes to whether or not she was in the course of her employment, and the commission has found that because she was on the premises within a time of the start of her workday, she was in the course of her employment. There are some other cases that came up during our commission arguments when course of employment was in dispute where it was found by our Supreme Court that a worker who was injured while just checking their schedule or picking up their paycheck was found to be in their course of employment, even though they weren't on the schedule. This is very similar to that scenario. I think we've covered most of the basis for my argument. As I said, I guess we can go back to traveling employee. If the court were to determine that she was a traveling employer, if the commission had determined that she was a traveling employee, then they would have applied the rules that apply to traveling employees and considered whether or not it would be reasonable and foreseeable for the employee to cross that barrier. Again, the pictures. I don't find anything unreasonable about stepping over or she said hopping. I don't think it matters. This is a low barrier and she's just getting off a bus and going directly to where she needs to go. I think the university can anticipate that pedestrians would do that. The university can predict that pedestrians will cross barriers? That type of barrier, yes. It's not the type of barrier. If they wanted to keep pedestrians out or tell pedestrians to use the crosswalk, they could have put a real fence. This isn't a fence. This is a chain link, low hanging barrier that prevents cars from driving up on the sidewalk. I guess I want to stress that Illinois law clearly establishes that an employee's own negligence doesn't disqualify them from recovery when the injuring event is incidental to their employment. In this case, I just can't see how the act of dropping off your time card is not incidental to Ms. Purcell's employment. If the commission had applied this law, the commission would not... If the commission had found that the act of dropping off her time card was incidental to her employment, I don't think it matters whether or not crossing the chain was unsafe, unnecessary, or even negligent. The important thing to consider, again, is the court to reverse the commission on the decision of finding Ms. Purcell's employment or her injury did not arise out of her employment. Thank you. Thank you. You will have time to reply. Five minutes to reply. Thank you. Mr. Guyette, wish to respond? Thank you, Your Honor. I do. May it please the court, counsel. My name is Joe Guyette, and I represent the appellee in this matter, the University of Illinois. We're asking for the commission's decision to be upheld, denying the petitioner's claim for benefits in this case. There's clearly no dispute regarding the proper standard of review in this matter. It's manifest weight of the evidence. Pursuant to that standard, it is the petitioner's burden to show that the opposite conclusion is clearly apparent. Counsel, we understand all of the standards. Just tell us why she wasn't a traveling employee or why there's no street risk. Thank you, Your Honor. We actually have three arguments in that regard. The first is that the petitioner was not a traveling employee at the time of her accident. She claims that she was a traveling employee because she had to walk across campus to deliver her time card to a personnel services building. This is inconsistent with the law. More importantly, it ignores the fact that she was on the university's premises the entire time. Under the Commonwealth Edison case, a traveling employee is one whose work duties require her to travel away from the employer's premises. Again, in this instance, the petitioner never left the university's premises, never left the campus. In this case, we have the university is comprised of many buildings. It's over a large period of land, a lot of land, but ultimately it is one In both of those instances, the petitioner was injured while traversing a sidewalk and was, in fact, found to be a traveling employee. In both of those instances, the petitioner had actually left the premises of the employer before he or she was injured. The petitioner also cited some cases in a reply brief suggesting that there's no need for travel between cities to establish that one is a traveling employee. Once again, we agree. The primary issue here is that a traveling employee is one who leaves the employer's premises, and that's not what occurred in this instance. The petitioner is attempting to very narrowly define what is the employer's premises as just the area where the petitioner primarily worked. Under that rationale, if I were to leave my office to walk down the hallway to get to the printer, I would be a traveling employee. Perhaps more applicably, if you have any employer in the entire state of Illinois with more than one building on the premises, all of the employees who walk between those buildings would then be considered traveling employees. Perhaps more applicable to the university's case, imagine that you have two professors. One leaves to go home for the day. One is going to drop off a book at a neighboring building. The one that leaves to go home for the day is on his own risk, and there is not a traveling employee. If the employee who goes to another building to drop off a book is considered a traveling employee, that employee would be at risk for a potential worker's compensation claim until he or she got all the way home. It cannot be that the act intended that to be the case. Counselor, let me ask you what perhaps may sound like a mundane question. When you look at the definition of a traveling employee, it is defined, traveling employee is one for whom travel is an essential element of her employment, and two, where they must travel away from the employer's premises to perform the job. Does she ostensibly meet those two criteria? I would suggest that she met neither of them. Obviously, if you follow the testimony of Clara Chu, the petitioner supervisor, she explained that the petitioner didn't travel very much, and in fact, when she did, it was always on campus and only at her supervisor's direction. It was not an essential element of her job, was it? Not at all. Okay. What about an essential element of her job that she has to take her hour sheet to personnel to be paid? Well, that's certainly a requirement to be paid. If you follow, again, the testimony of both Clara Chu and the HR representative from the university, that's supposed to be done on her own time, and so it is a requirement to be paid, but the fact remains that even if that one task is necessary, it's not a necessary function of her job, and further, she was still on the university's campus, and so if we again turn to the manifest weight standard, does the evidence in this case support the commission's finding that the petitioner was not a traveling employee? I would submit that it absolutely does, primarily because the petitioner never left the premises of the University of told that she must deliver her time sheet to personnel, so you're saying she's in the course of correct? That was the finding of the commission, and we're not challenging that at this point. So now we're dealing, did it arise out of it, right? That is correct, your honor. Okay. Well, along those same lines comes to our second argument, which is effectively, assuming the petitioner was a traveling employee, even, let's assume that, it's our position that her actions were neither reasonable nor foreseeable, and so we talked quite a bit already in this case about the fact that the petitioner chose to encounter this fence, that she hopped over, she didn't step over it, that was her testimony. We cited the Jensen. Let me get this straight, she chose to encounter the fence? Correct. Her testimony at trial was that there was an opening a couple of feet to the left where she could have encountered, gotten on the sidewalk without having to deal with the fence whatsoever. There was a crosswalk that was a few more feet to the left. The reality is she had any number of options to get to the sidewalk without having to encounter this fence whatsoever, and she chose not to use those options. And in fact, she admitted at trial that had she taken the detour a couple feet to her left, it would have cost her no more than a nothing. There's no benefit to the employer by her taking a couple of extra seconds to avoid the fence that ultimately was obviously very dangerous, and that it caused her accident. Guyette, do you believe that the Dotson case applies here? Absolutely. Now you respond to Ms. Loeb's argument. She attempts to distinguish Loeb from this case, or Dotson from this case, on the basis that in Dotson, the employer was leaving for the day. Here she was in the course of her job. I don't see that either activity is any more necessary than the other. In the Dotson case, the petitioner isn't going to stay at work until the next day. He has to get home. She has to get home. She has to get to her car in the parking lot. That is a necessary task one way or the other. And in both instances, where those cases are both on point, and these cases align, the petitioner made the choice to encounter a dangerous condition when a very much not alternative existed without any effort whatsoever. So your position is that hopping over the fence is a personal frolic that takes her out of arising out of her employment? That is correct. It has nothing to do with her employment. Ultimately, it's our position that the petitioner's duty was to travel from wherever she was to the personnel services to turn in her time card. She wasn't injured by walking to the personnel services building. She was injured by her unnecessary choice to hop over the fence. I want to address the petitioner's argument that there's no room for contributory negligence in a worker's compensation claim. Now, I believe that that argument would be more impactful if in this case the petitioner was injured when she was looking at her phone and walked into a curb or if she was otherwise distracted by something she was doing and then tripped over the fence. In this instance, we don't have any of that. She very clearly made the decision that she was going to hop over the fence to get to the sidewalk. That's not negligence. That's intent. And in this case, the petitioner's argument that contributory negligence has no room in a worker's compensation claim, we absolutely agree. And that's not the argument that we're making. It's our argument, again, that this argument was that this accident was not caused by the walk to the personnel services building. It was caused by the unnecessary decision to encounter the fence along that route. So again, we're talking about what's reasonable and foreseeable. And I want to go back to the petitioner's testimony. Again, the petitioner testified that only a few feet to the left was an opening where she would not have had to encounter the fence to get to the sidewalk. And she again testified that it would have cost her mere seconds to take that route as opposed to encountering the fence. And that is precisely why the university should not have foreseen that anyone would hop over the fence. Why would someone take the risk of hopping over a fence when there is a route to take that would not involve the fence whatsoever seconds or feet away. And that's why the university should not have foreseen that. And that's why the petitioner's actions in this case were not reasonable. And therefore, even if she was considered a traveling employee, this case would not be compensable. Our final argument is separate from the traveling employee argument, and it's more in line with Dotson. And we've covered that to some extent, but I want to touch on a couple of points. Essentially, again, it's our argument that the walk to the personnel services building wasn't what injured the employee. It was the decision to hop over the fence. Now, we had a bit of a discussion about the knee or the knee case that the appellate court had decided previously, where the petitioner was injured encountering the curb is the petitioner's assumption and the petitioner's argument that that is analogous to this case. And we believe it can be fairly easily distinguished. In the knee case, the petitioner had encountered that curb getting out of a curb, getting out of a car. It's reasonable. It's anticipated. It's foreseeable that someone is going to encounter a curb, either getting out of a car, getting out of a taxi, crossing the street. Contrast that to the case at bar, where we have someone who is deciding to hop over a chain link fence. Those are not the same decision. It's foreseeable in one case, and it's absolutely not foreseeable in the other. Was it a hop or a step? Well, your honor, is there anything in the record that describes it as a hop? Yes, your honor. We had cited the portion of the transcript, I believe it's 269 to 270, I believe, where the petitioner actually used the word hopped by herself. Okay, well, that's fine. That's fine. I didn't know if it was a characterization that, you know, counsel was making, but it's in there. It was described as a hop. It is in the record, and I do believe that it's significant. You know, clearly, there would be more risk associated with leaving your feet than there would be simply taking a large step. In this case, the petitioner has failed to establish if there's any benefit to the fence. You know, ultimately, she did have to turn in her time card, but the activity of hopping over the fence is unrelated to the task of turning in the time card. Finally, I want to address the street risk doctrine. Once again, in our brief, we pointed out that the street risk doctrine contemplates traffic perils, falls, dogs, and bullets. All those things are things that, again, would be more in line with the negligence we were talking about earlier, things that are unavoidable. In this instance... That sounds like a good title for a movie. I'd watch it. In this instance, the petitioner made the distinct choice to encounter this risk. The fence was not dangerous before she tried to hop over it. It's not dangerous to anyone walking around the area. It's not dangerous to anyone on campus. The reality is that only time this fence became a danger was when the petitioner tried to jump over it and failed to do so. And for that reason, we believe that this fence is distinguishable from a traditional street risk, much like a window is not a risk to anyone until you try to jump through it. Ultimately, it was the petitioner's decision to encounter this risk that separates it from what we generally consider street risks. In summary, the petitioner was not a traveling employee because she never left her employer's premises. Further, even if the petitioner was a traveling employee, her decision to hop over a fence, given the very easy alternatives, was both unreasonable and unforeseeable. And finally, even if she was not a traveling employee, she made an unnecessary personal choice to hop over the fence, which had nothing to do with her employment at the University of Illinois. And as a result, the petitioner was not a traveling employee. So, I'm not sure that there's any other reason out of her employment with the University. Thank you. Thank you, counsel. Ms. Lowe, you may reply. I just don't see how the University's argument is any different than creating an assumption of something that, I mean, I think it speaks to the fact that the fence or the barrier was not obviously dangerous. She didn't do it on a frolic. She did it probably just as somebody would pick up the phone while they're crossing the street, if their phone rang. It was just something that was the most direct route to where she was going, and unfortunately, she suffered an unnecessary risk. The finding is not based on the fact that the employee assumed an unnecessary risk only. It's that they assumed an unnecessary risk that was purely personal. Those are the words that the Dotson court uses. Again, this decision was not purely personal. She's in the on the University's premises also should not rule out her from a finding of compensability, because it just so happens that the University's premises requires traversing public streets and sidewalks. So, I don't see how you can distinguish between this case and other cases where encountering a street risk is deemed compensable by virtue of the fact that the employee needs to be there. Mr. Loeb, let me ask you a question about your traveling employee argument. It's my understanding that she was employed as an administrative assistant on a temporary or extra held basis. Is that correct? Yes, that's correct. So, would it be your position that everybody who's working temporarily at the University of Illinois who has to drop off a time card automatically becomes a traveling employee? That's a very good question. I think while they're performing that act, yes. While they have to travel to drop off their time card, yes, I think they do qualify. That would come as a big surprise to the University, don't you think? I would assume the University doesn't have that practice. It's a very unusual practice to have somebody mandated to bring a card to drop off these days. But if that's the case, if this was part of her commute, it wouldn't be compensable. But again, the commission has found that this was in the course of her employment and it should also be found that it arose out of it because of the connection it has with her employment. Are there any further questions? I hear none from the court. Thank you, counsel. Thank you, counsel, both for your arguments in this matter.